UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                 :
TRAMAIN ANDREW,                       :
                        Plaintiff,   :
                                                 :      13-cv-8531 (KBF)
               -v-                                 :
                                                :      OPINION & ORDER
BELLEVUE HOSPITAL, et al.,         :
                        Defendants.:
                                                :
------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: November 30, 2016

KATHERINE B. FORREST, District Judge:

      Plaintiff Tramain Andrew, proceeding pro se, filed this action on November 26, 2013. (Compl., ECF No. 2.) The case was reassigned to the undersigned on January 15, 2016. The operative complaint alleges that defendants showed deliberate indifference to plaintiff's alleged medical need for a continuous positive airway pressure ("CPAP") machine to treat sleep apnea, in violation of his rights under the Eighth Amendment. (Second Amended Compl. ("SAC"), ECF No. 40.) Defendants have moved to dismiss for failure to state a claim. (ECF No. 111.)

      For the reasons set forth below, defendants' motion is GRANTED.

I.    FACTUAL BACKGROUND

      At the time of the events alleged in the SAC, Andrew was an inmate in the custody of the New York City Department of Correction at Rikers Island.[1] He alleges that between approximately July 2012 and September 2013, defendants failed to respond to his requests for a CPAP machine or to transfer him to the North Infirmary Command ("NIC"), where he could access a CPAP machine. Attached to

---

[1] He currently resides at the North Infirmary Command at Rikers.

1

the SAC is a letter from a physician dated March 1, 2013, stating that plaintiff's sleep apnea causes "excessive daytime sleepiness which is an impediment to his daily activities" and that "[t]reatment with CPAP is imperative for the patient, and is a medical necessity for treatment of his condition[.]" (SAC at Ex. 5.) Plaintiff alleges that his inability to access a CPAP machine has resulted in various health problems, including "weight gain," "depression," "lethargic feeling, unable to function during daytime," "constant headaches," "choke during rest and vomiting blood," "dizz[i]ness," "inability to focus," and "slowed up metabolic rate." (Id. at 10.) Throughout the SAC, plaintiff alleges that defendants showed "d[e]liberate indifference" to his need for a CPAP machine. (Id. at 2, 3, 7, 8, 9.)

While the SAC names twenty-three individual defendants, plaintiff voluntarily dismissed claims against fifteen of them. (ECF No. 126.) The allegations against each remaining defendant who has moved to dismiss[2] are as follows:

  a. Michael Latunji

Plaintiff alleges that on May 24, 2012, he had an appointment with Dr. Michael Latunji "for a chart review" and that Dr. Latunji "refused to handle [his] sleep apnea and [his] request." (SAC at 2.) The medical record of this appointment states that it was a "Telephone Encounter" and that Dr. Latunji's notes regarding plaintiff's "sleep apnea [history]" indicate that plaintiff "offer[ed] no medical complaints—[patient] claimed he is not on the machine for now." (Id.)

---

[2] Defendants Lynn Devivo, Eugene Burke, Jacqueline Maynard Rpac, and Melanie Farakas have not moved to dismiss.

b. <u>Ferdousi Begum</u>

Plaintiff alleges that on May 30, 2012, he "informed Ferdousi Begum, MD of [his] history of sleep apnea and [his] c-pap use." (SAC at 2.) Plaintiff asserts, "I told the doctor [Begum] that I have not been allowed to be compliant with my doctor order from NYU sleep study because I can only use it at NIC and I need to be transfer[r]ed there, so that I could be compliant." (<u>Id.</u>) He alleges that Dr. Begum "refuse[d] to transfer or get [plaintiff] treatment and ignor[ed] medical orders." (<u>Id.</u>) Dr. Begum's notes from this appointment state that plaintiff "has [history] of sleep apnea was on CPAP before (state not compliant with use)." (<u>Id.</u> at Ex. 2B.)

Plaintiff claims that he saw Dr. Begum again on July 12, 2012, and that plaintiff "addressed [his] severe 'OSA' and [his] c-pap machine," but that he "was told [he's] not being seen for sleep apnea instead [he's] being seen for GERD [(gastroesophageal reflux disease)]," and that Dr. Begum noted that plaintiff "states no other complaint." (<u>Id.</u> at 3.) The medical record of this appointment lists "GERD" as the only reason for the appointment and that plaintiff "offer[ed] no other complaint." (<u>Id.</u> at Ex. 2E.)

c. <u>Carlotta John-Hull</u>

Plaintiff alleges that he saw Dr. Carlotta John-Hull on July 27, 2013, and that he signed a release authorization for two sleep-study reports during this appointment. (SAC at 6.) Afterwards Dr. John-Hull telephoned defendant Dr. Tahmina Sikder regarding the possibility of transferring plaintiff to NIC. (<u>Id.</u>)

3

    d. <u>Tahmina Sikder</u>

Plaintiff alleges that Dr. Tahmina Sikder "answered [the telephone] from NIC but refused to see [him]." (SAC at 6.) Plaintiff further alleges that on July 27, 2013, defendant Dr. John-Hull called Dr. Sikder a second time to discuss plaintiff's sleep apnea. (<u>Id.</u> at Ex. 4.) The notes from this call indicate that plaintiff had a history of "sleep apnea on CPAP . . . requested NIC admission FOR CPAP. However [patient] is not sure about his setting and as per [discharge] summary from [Bellevue Hospital] [patient] was not using it prior to incarc[e]ration as he was living in street. As per presenting MD [h]is own doctor is unreachable. So awaiting CPAP setting from community. Recommend to call back on [M]onday with setting." (<u>Id.</u>) The SAC alleges that if Dr. Sikder had "pull[ed] [his] prior file from 2012" she would know about his "complaint about [his] need for c-pap." (<u>Id.</u> at 7.)

II.    LEGAL PRINCIPLES

    a. <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).

In deciding a 12(b)(6) motion, the Court may not consider evidence proffered by any party, but is instead limited to the allegations in the complaint and facts

4

from documents either referenced therein or relied upon in framing the complaint. See DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). The Court must accept as true all well-pled factual allegations, but does not credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action," id., and will give "no effect to legal conclusions couched as factual allegations." Port Dock & Stone Corp. v. Oldcastle Ne., Inc., 507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555). Knowledge and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9(b). But, if the Court can infer no more than the mere possibility of misconduct from the factual averments—in other words, if the well-pled allegations of the complaint have not "nudged [plaintiff's] claims across the line from conceivable to plausible"—dismissal is appropriate. Twombly, 550 U.S. at 570; Starr, 592 F.3d at 321 (quoting Iqbal, 556 U.S. at 679).

Because Andrew is proceeding pro se, his submissions "must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)) (emphasis in original). Additionally, "[p]ro se submissions are generally reviewed with 'special solicitude,' and we interpret them to raise the strongest claims possible." Kalican v. Dzurenda, 583 F. App'x 21, 22 (2d Cir. 2014) (quoting Triestman, 470 F.3d at 475). However, a pro se complaint still must state a plausible claim for relief or it will be dismissed. Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

5

b. <u>Eighth Amendment</u>

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment." U.S. Const. amend. VIII. While it "does not mandate comfortable prisons," <u>Rhodes v. Chapman</u>, 452 U.S. 337, 349 (1981), the Constitution does impose a duty to "provide humane conditions of confinement." <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). However, "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." <u>Smith v. Carpenter</u>, 316 F.3d 178, 184 (2d Cir. 2003).

"To establish an Eighth Amendment violation arising out of inadequate medical treatment, a prisoner must prove 'deliberate indifference to [his] serious medical needs." <u>Johnson v. Wright</u>, 412 F.3d 398, 403 (2d Cir. 2005) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)); <u>see also</u> <u>Gaston v. Coughlin</u>, 249 F.3d 156, 164 (2d Cir. 2001). To plead a claim, a plaintiff must allege plausible facts supportive of such an inference. The deliberate indifference standard has both an objective and a subjective prong. <u>Hill v. Curcione</u>, 657 F.3d 116, 122 (2d Cir. 2011). To state a claim, a plaintiff must first allege "that his medical condition is an objectively serious one." <u>Brock v. Wright</u>, 315 F.3d 158, 162 (2d Cir. 2003). Then, for each defendant, he must allege facts supportive of an inference "that [each such] defendant acted with deliberate indifference to" that medical condition. <u>Id.</u>

6

        i.      Serious medical needs

"'Because society does not expect that prisoners will have unqualified access to health care,' a prisoner must first [allege sufficient facts to] make [a] threshold showing of serious illness or injury in order to state an Eighth Amendment claim for denial of medical care." Smith, 316 F.3d at 184 (quoting Hudson v. McMillian, 503 U.S. 1, 9 (1992)). The Second Circuit has defined a serious medical need as "'condition of urgency, one that may produce death, degeneration, or extreme pain.'" Shenk v. Cattaraugus Cnty., 305 F. App'x 751, 753 (2d Cir. 2009) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)).

"There is no settled, precise metric" for determining whether a medical condition qualifies as "serious," but the Second Circuit has set forth a non-exhaustive list of factors, including "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) 'the existence of chronic and substantial pain.'" Brock, 315 F.3d at 162 (quoting Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998)).[3]

---

[3] Examples of medical conditions the Second Circuit has found sufficiently serious to meet this standard include "chronic pain" with "a periodic inability to walk," Rodriguez v. Manenti, 606 F. App'x 25, 27 (2d Cir. 2015); a dental condition in which the plaintiff "suffered extreme pain, his teeth deteriorated, and he [was] unable to eat properly," Chance, 143 F.3d at 703; and a "degenerative hip condition [that] required corrective surgery" and that caused "great pain over an extended period of time [and] difficulty walking," Hathaway v. Coughlin, 37 F.3d 63, 67 (2d Cir. 1994).

7

    ii.  Deliberate indifference

  To state a claim of deliberate indifference to his or her serious medical needs, a plaintiff must allege sufficient facts to support an inference that "the defendant must have acted with the requisite mental state, meaning 'something more than mere negligence' and akin to criminal recklessness." Griffin v. Amatucci, 611 F. App'x 732, 734 (2d Cir. 2015) (quoting Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996)). See also Lawrence v. Evans, ___ F. App'x ___, 2016 WL 5387481 at *1 (2d Cir. Sept. 27, 2016) ("To satisfy the subjective component [of an Eighth Amendment medical-treatment claim], a plaintiff must establish the equivalent of criminal recklessness, i.e., 'that the charged official act[ed] or fail[ed] to act while actually aware of a substantial risk that serious inmate harm will result.'" (quoting Salahuddin v. Goord, 467 F.3d 263, 280 (2d Cir. 2006)). The facts alleged must support an inference that the official "kn[ew] of and disregard[ed] an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). The facts alleged must support both that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and that that he or she in fact drew such an inference. See id. Allegations of deliberate indifference must include facts supporting a showing "that the charged official act or fail to act while actually aware of a substantial risk that serious harm will result," i.e., that the official "must be subjectively aware that his conduct creates such a risk." Salahuddin, 467 F.3d at 280-81.

III.   DISCUSSION

   a.  <u>Serious medical need</u>

Construed liberally, Andrew's complaint alleges that his sleep apnea and resulting symptoms constitute a serious medical need under the Eighth Amendment. See <u>Triestman</u>, 470 F.3d at 474. Defendants do not dispute this allegation.[4] Therefore, the Court assumes—without deciding—that Andrew states a serious medical need.

   b.  <u>Deliberate indifference</u>

Andrew's complaint fails at the next step of the analysis, however. He does not allege sufficient facts to support a showing of subjective deliberate indifference to his medical need by any of the remaining defendants. See <u>Farmer</u>, 511 U.S. at 837 (explaining that the defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference").

Plaintiff alleges only that he told defendants of his sleep apnea or that he requested a CPAP machine. Plaintiff fails to allege that any defendant subjectively knew of the injuries alleged in his complaint, such as "constant headaches," "[inability] to function during daytime," or "vomiting blood." (SAC at 10.) Nor does plaintiff allege that he informed any defendant of these injuries. Without facts to support an inference that any defendant knew of his alleged injuries, plaintiff's allegations of deliberate indifference are inadequate.

---

[4] While the Second Circuit has not ruled definitively on whether the injuries that Andrew describes as resulting from his sleep apnea create a serious medical need with constitutional implications, the Court need not address this issue as the element is uncontested.

Even if knowledge of plaintiff's sleep apnea alone—without the accompanying alleged effects—could constitute subjective awareness of a serious medical need, plaintiff fails to allege facts supporting that any defendant drew an inference that a substantial risk of serious harm existed, or that any defendant disregarded such a risk.  See Farmer, 511 U.S. at 837.  First, as to defendant Dr. Latunji, plaintiff alleges that on May 24, 2012, Dr. Latunji spoke with plaintiff for the purpose of a "chart review" during a facility transfer, that Dr. Latunji noted plaintiff had a history of sleep apnea, and that Dr. Latunji scheduled a follow-up appointment.  (SAC at Ex. 2.)  These allegations are insufficient to support an inference of deliberate indifference.

Second, with regard to Dr. Begum, plaintiff alleges that, less than a week after the chart review with Dr. Latunji, he met with defendant Dr. Begum to address the conditions noted by Dr. Latunji, including his sleep apnea.  (Id. at Ex. 2B.)  Dr. Begum noted the existence of sleep apnea and that plaintiff was not currently on a CPAP machine.  (Id.)  The facts alleged do not, however, provide any basis for an inference that Dr. Begum understood that lack of access to a CPAP machine posed an excessive risk to plaintiff's health, or that Dr. Begum disregarded such a risk.

Third, as to defendant Dr. John-Hull, plaintiff has included factual allegations in his complaint.  He does alleged that after receiving the sleep-study reports documenting plaintiff's sleep apnea, Dr. John-Hull called defendant Dr. Sikder to report plaintiff's sleep apnea and to discuss the possibility of admitting

10

plaintiff to NIC.  But beyond that, plaintiff alleges no facts supporting an inference that Dr. John-Hull disregarded an excessive risk to plaintiff's health.  To the contrary, both plaintiff's complaint and the attached medical records indicate that Dr. John-Hull pursued the possibility of transferring plaintiff to NIC to facilitate access to a CPAP machine.  (SAC at Ex. 4.)

Finally, as to defendant Dr. Sikder, plaintiff alleges that she refused to transfer him to the NIC because neither she nor Dr. John-Hull knew plaintiff's CPAP machine settings.  (Id.)  While plaintiff may disagree with defendant Dr. Sikder's recommendation not to transfer him to the NIC unit without knowing plaintiff's CPAP machine settings, this kind of disagreement about appropriate treatment or transfer protocol does not constitute deliberate indifference.  See Chance, 143 F.3d at 703.  Moreover, as with the other defendants, plaintiff fails to allege sufficient facts supportive of deliberate indifference by Dr. Sikder.

While plaintiff's SAC repeatedly alleges "d[e]liberate indifference" by defendants, his factual allegations do not support this legal conclusion even under the most liberal construction.  See Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

IV.  CONCLUSION

For the reasons set forth above, the motion to dismiss is GRANTED.  The

11

Clerk of Court is directed to close the motion at ECF No. 111 and to terminate this action.

SO ORDERED.

Dated:      New York, New York
               November 30, 2016

                                                     _____
                                                         KATHERINE B. FORREST
                                                       United States District Judge

cc:
Tramain Andrew
3491605819
North Infirmary Command
Rikers Island
15-00 Hazen Street
East Elmhurst, NY 11370